UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X
  SEAN LEGURNIC

                Plaintiff,

       -against-

  SALVATORE CICCONE

                Defendant.
----------------------------------------------------------X

**FILED
CLERK**
11/25/2014 3:50 pm

**U.S. DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
LONG ISLAND OFFICE**

**MEMORANDUM OF
DECISION AND ORDER**
09-CV-1436 (ADS) (AKT)

**APPEARANCES:**

**Law Offices of Anthony C. Donofrio**
*Attorneys for the Plaintiff*
5518 Merrick Road
Massapequa, NY 11758
    By: Anthony C. Donofrio, Esq.,
       Arnab Bhukta, Esq., Of Counsel

**Mark E. Goidell, Esq.**
*Attorney for the Defendant*
377 Oak Street
Suite 101
Garden City, NY 11530

**John A. Servider, Esq.**
*Attorney for the Defendant*
65-12 69th Place
Middle Village, NY 11379

**SPATT, District Judge**.

      This case arises out of investments made by the Plaintiff Sean Legurnic (the "Plaintiff") in Agape World, Inc. ("Agape") from 2007 to 2008. Agape operated a "Ponzi Scheme," which was unknown to the Plaintiff at the time of his investments. As the evidence at the trial showed, the Plaintiff's investments were solicited by the Defendant Salvatore Ciccone (the "Defendant"), a broker for Agape.

1

From April 1 through April 3, 2014, a jury trial was held on the Plaintiff's claims against the Defendant based on fraud and unjust enrichment. On April 4, 2014, in answer to questions on a verdict sheet provided by the court, the jury (1) found for the Defendant on the fraud cause of action; (2) found for the Plaintiff on the unjust enrichment cause of action; (3) declined to award "monetary damages" to the Plaintiff on either cause of action; (4) awarded "nominal damages" of $1.00 to the Plaintiff; and (5) awarded punitive damages in the amount of $166,025 to the Plaintiff. (Dkt. No. 104, Ex. 1.) A judgment was entered on May 8, 2014. (Dkt. No. 109.)

Presently before the Court is the Defendant's motion pursuant to Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 59(e) to alter or amend the judgment by vacating the punitive and nominal damage awards on the unjust enrichment claim. In the alternative, the Defendant seeks judgment as a matter of law pursuant to Fed. R. Civ. P. 50(b)(3) striking the punitive and nominal damage awards. For the reasons set forth below, the Court grants the Defendant's motion.

## I. BACKGROUND.

Although the parties' familiarity with the underlying facts and procedural history of the case is assumed, a brief review of the relevant procedural history is in order.

### A. The Trial Proceedings

On April 1, 2014, a jury trial commenced as to the Plaintiff's claims against the Defendant based on fraud, breach of fiduciary duty, and unjust enrichment pursuant to which the Plaintiff sought compensatory and punitive damages. (Dkt. No. 97.)

In the Plaintiff's case, two witnesses were presented: the Plaintiff and the Defendant. The crux of the Plaintiff's theory with respect to unjust enrichment was that the Defendant received commissions as a result of the Plaintiff's investments in Agape, which he in equity and good conscience should not have kept because Agape participated in a Ponzi Scheme. (Tr. 38:1–39:5, 42:1–4.) For example, the Plaintiff testified that the Defendant told him that he made approximately a three percent commission on his deals with the Plaintiff. (Tr. 144:12(Tr. 38:11–17.) However, in response to a question from attorney Bhukta on direct examination, the Defendant testified that "I make money on whatever moneys. It wasn't [the Plaintiff's]. If I brought in a bunch of money, I would get commission. But I was an investor." (Tr. 171:1–4; 205:19–24.)

On the other hand, the Defendant sought to elicit testimony intended to show that there was no evidence that the Defendant received commissions as a result of the investments made by the Plaintiff. (Tr. 46:2–7.) For example, on cross-examination, the Plaintiff testified that he did not have any "proof" that the Defendant received a three percent commission from the Plaintiff's investments. (152:1–15.) Similarly on cross examination, the Defendant testified that he did not "specifically" receive a commission from the Plaintiff's investments. (Tr. 233:10–11.) Based on this testimony, the Defendant argued that the Plaintiff failed to prove that the Defendant was unjustly enriched as a result of the Plaintiff's loans. (Tr. 249:12–15.)

**B. The Defendant's Pre-Verdict Motion for a Judgment as a Matter of Law**

On April 2, 2014, at the close of the Plaintiff's case, John Servider, Esq. ("Servider"), counsel for the Defendant, made a motion for a judgment as a matter of law with respect to the Plaintiff's fraud, breach of fiduciary duty, and unjust enrichment claims. (Tr. 249:7–9.) With respect to the Plaintiff's unjust enrichment claim, Servider stated, "[T]here was no testimony or

3

proof or evidence – let's talk about evidence – that [the Defendant] received any of [the Plaintiff's] money. Therefore, there was no unjust enrichment." (Tr. 249:12–15.)

In response, Arnab Bhukta ("Bhukta"), counsel for the Plaintiff, voluntarily withdrew his claim for breach of fiduciary duty because he had "not proven that." (Tr. 251:8–9.) With respect to unjust enrichment, Bhukta stated, "[t]here is plenty of testimony that Sal earned 1 to 3 percent commission from [the Plaintiff]. He was able to pull money from Agape World up and until the very end. There's testimony now that he has bought houses, receiving 70 percent of his income as a broker. I believe that claim is strong and should stand." (Tr. 251:12–18.)

The Court granted the Plaintiff's request to withdraw his breach of fiduciary duty claim and reserved decision as to the unjust enrichment and fraud causes of action. (Tr. 256:13–18.) Thereafter, the Defendant indicated that he was not going to "put a case in" and rested his case. (Tr. 259:1–7.)

## C. The Pre-Deliberations Charge Conference

After both sides rested, the Court held a charge conference during which it discussed with counsel for the parties the Court's intended charge to the jury and provided the proposed verdict sheet. With respect to unjust enrichment, the Court's proposed the following instruction, as to what the Plaintiff had to prove: "First, that the [D]efendant . . . was enriched; Second, that the [D]efendant . . . was enriched at the plaintiff's expense; Third, that equity and good conscience advised against permitting the defendant to retain what the [P]laintiff is seeking to recover. The essential [inquiry] on a claim of unjust enrichment is whether it is against equity and good conscience to permit the defendant to retain what the plaintiff seeks to recover." (Tr. 306:4–13.) Neither party objected to the instruction. (312:19–21.)

4

With respect to damages on the unjust enrichment claim, the Court provided the following instruction: "If you find that the [D]efendant did commit the acts of unjust enrichment, you must then decide whether that violation was a substantial factor in causing the [P]laintiff to sustain damages . . . . If you find that the [D]efendant's acts of unjust enrichment were a substantial factor in causing the [P]laintiff to sustain damages, you must then decide the amount of damages the plaintiff sustained as a result of the unjust enrichment by the defendant." (Tr. 315:6–18.)

With regard to nominal damages, the Court proposed the following instruction: "If you find that the plaintiff suffered no compensable monetary loss as a result of the Defendant's conduct, you may award nominal damages not to exceed one dollar." (See Tr. 315:19–23.)

Lastly, with regard to "punitive damages," the Court proposed: "If the [P]laintiff . . . proves by a preponderance of the evidence that he is entitled to a verdict for actual damages, and you further find that the conduct of the [D]efendant . . . which proximately caused damages to the [P]laintiff was gross, wanton or deliberate and demonstrates a high degree of moral culpability, then you may add to the award of actual damages such amount as you shall unanimously agree to be proper as punitive damages." (Tr. 317:6–14.)

Counsel for both parties did not object to the Court's proposed instructions. (Tr. 320:15–16.)

**D. The Verdict Sheet**

After reviewing its proposed charge, the Court gave the parties copies of the proposed verdict sheet. (Tr. 325:6–7.) Initially, the verdict sheet asked the jury to provide an answer as to the liability of the Defendant on the fraud and unjust enrichment causes of action. (Dkt. No. 104, Ex. 1.)

With respect to damages, the verdict sheet asked the jury fill in an award of "monetary" damages on the fraud and/or the unjust enrichment causes of action if it found the Defendant was liable as to either or both causes of action. (Id.) The verdict sheet further asked the jury to fill in an award of nominal damages" if it "decline[d] to award damages to the Plaintiff . . . for monetary loss." (Id.) Finally, the verdict sheet asked the jury to fill in an award of punitive damages if it found that "in addition to any compensatory or nominal damages, it is necessary to award punitive damages both (1) to punish the Defendant . . . for wanton, reckless, and malicious conduct, and (2) to deter such future conduct." (Id.)

The Court provided counsel for both parties with the opportunity to object to the verdict sheet and to request modifications. Attorney Bhukta requested that the Court modify the verdict sheet with respect to the unjust enrichment claim as follows: "Did the [P]laintiff prove that the [D]efendant . . . was unjustly enriched as a result of the loans by the [P]laintiff to Agape World, Inc.?" (Tr. 333:22–25.) The Court accepted Bhukta's requested change. (Tr. 334:2.) There were no other objections to the verdict sheet.

**E. The Proceedings Related to the Jury Note Regarding Nominal Damages**

On April 3, 2014, the jury commenced deliberations. During deliberations, the jury submitted a note to the Court asking, "Can we award punitive damages if we only award nominal damages?" (Tr. 96:8–9.)

The Court granted the parties oral argument as to how it should respond to the note. Attorney Bhukta, counsel for the Plaintiff stated, "I understand the answer to that question is a yes . . . The verdict sheet [states] if you find nominal damages I award punitive damages." (Tr. 96:13–18.)

In response, the Court stated that in Hubbell v. Trans World Life Ins. Co. of New York, 50 N.Y.2d 899, 408 N.E.2d 918 (1980), the New York Court of Appeals stated "absent a valid claim for compensatory damages, there could be none for punitive damages." (Tr. 96:19–97:1.) However, the Court noted that in that case, the "jury found no damages at all . . . and they weren't probably asked about nominal damages." (Tr. 97:2–4.)

The Court then discussed Bryce v. Wilde, 39 A.D.2d 291, 292, 333 N.Y.S.2d 614, 615 (3d Dep't 1972) aff'd, 31 N.Y.2d 882, 292 N.E.2d 320 (1972). The Court noted that in Bryce, the Third Department stated, "[p]unitive damages are not recoverable alone although they may be based upon an award of nominal compensatory damages and there must be actual malice shown on the part of a defendant." (Tr. 97:8–18.)

Relying on Bryce, the Court concluded that "if the conduct is egregious, you can award punitive damages, but . . . you have to have something else besides the punitive damages, and the something else . . . can be nominal damages." (Tr. 97:19–98:4.) The Court then stated that it was going "tell the jury in answer to this note , . . . if it meets all the other requirements of punitive damages, the answer is yes." The Court then and asked counsel if there were any objections. (Tr. 98:18–21.)

Servider, counsel for the Defendant, expressed his "feeling with the unjust enrichment element, one of the elements, and I believe they bypass that and now they are going back to it. That is what it appears to be." Servider later asked the Court to "note my objection. I don't think it should be an issue." (Tr. 98:24–25.)

After bringing the jury into the court room, the Court stated that its answer to the jury's question was, "[a]ssuming that the [P]laintiff has proven all of the required elements of punitive damages which you know I charged you on, wanton, malice conduct, assuming the [P]laintiff has

7

proven all of the required elements to establish punitive damages, the answer is yes, you can award punitive damages if you only award nominal damages." (Tr. 100:19–25.)

## F. The Jury Verdict

On April 4, 2014, the jury concluded their deliberations. The jury rendered **a** verdict finding the Defendant liable only with respect to the Plaintiff's unjust enrichment claim. (Id.) It found the Defendant not liable with respect to the Plaintiff's fraud claim. (Id.) The jury filled in "$0" in "monetary damages" as to the unjust enrichment cause of action. (Dkt. No. 104, Ex. 1.) The jury **also** filled in $1.00 as an award for "nominal damages." (Id.) Finally, the jury answered "yes" to the question regarding whether the Defendant was liable for "punitive damages" and awarded $166,025 in punitive damages. (Id.)

Following the verdict, the Defendant renewed his motion for judgment as a matter of law based solely on his pre-verdict motion. (Tr. 5:14–25.) The Court denied the Defendant's renewed motion for judgment as a matter of law. (Id.)

On May 8, 2014, the Court entered judgment consistent with the jury's verdict. (Dkt. No. 108.) On June 2, 2014, the Defendant filed this motion pursuant to Fed. R. Civ. P. 59(e) and 50(b)(3) to alter or amend the judgment and/or for a judgment as a matter of law.

## II. DISCUSSION

## A. Legal Standards

### 1. Rule 50(b) Motion for Judgment as a Matter of Law

Fed. R. Civ. P. 50(a) permits a motion for a judgment as a matter of law at any time before a case is submitted to the jury. Mannion v. Coors Brewing Co., 530 F. Supp. 2d 543, 549 (S.D.N.Y. 2008). "Provided the proper pre-verdict motion has been made and renewed, Rule 50(a) permits a district court to enter judgment as a matter of law against a party on an issue

8

where there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue." AIG Global Sec. Lending Corp. v. Banc of Am. Sec., LLC, 386 Fed. App'x 5, 6 (2d Cir. 2010) (citation omitted).

Pursuant to Fed. R. 50(b), a party can renew its motion after an unfavorable verdict but the motion may be limited "only to the grounds specifically raised in the prior motion for judgment as a matter of law; new grounds may not be added post-trial." Id. (quoting Tolbert v. Queens Coll., 242 F.3d 58, 70 (2d Cir. 2001)). If the party did not raise an issue in its pre-verdict motion, the Court may reach it only if it finds that "to ignore it would result in manifest injustice" or if it would constitute a "purely legal error." Id.

The standard in granting a post-verdict motion is strict. In particular, to grant a motion pursuant to Fed. R. Civ. P. 50(b), there must be a "'complete absence of evidence supporting the verdict that the jury's findings could only have been the result of sheer surmise and conjecture, or . . . such an overwhelming amount of evidence in favor of the movant that reasonable and fair minded men [and women] could not arrive at a verdict against [it].'" Slack v. Cnty. of Suffolk, No. 11-Civ-2711 (ADS), 2014 WL 4700214, at *6 (E.D.N.Y. Sept. 20, 2014) (alterations in original) (quoting DiSanto v. McGraw–Hill, Inc., 220 F.3d 61, 64 (2d Cir. 2000)).

The same standard that applies to a pre-trial motion for summary judgment pursuant to Fed. R. Civ. P. 56 also applies to 50(b) motions. Id. (quoting Piesco v. Koch, 12 F.3d 332, 341 (2d Cir. 1993). Therefore, when ruling on a Fed. R. Civ. P. 50(b) motion, a court must "'consider the evidence in the light most favorable to the [non-moving party] and . . . give that party the benefit of all reasonable inferences that the jury might have drawn in [its] favor from the evidence.'" Rosello v. Long Island Rail Rd. Co., No. 11-CV-5447 (ADS), 2014 WL 4638980, at *5 (E.D.N.Y. Sept. 16, 2014) (alterations in original) (Spatt, J.) (quoting Concerned

9

Residents for the Env't v. Southview Farm, 34 F.3d 114, 117 (2d Cir.1994)). Accordingly, a Court can only grant a Rule 50(b) motion if "the evidence is such that, without weighing the credibility of the witnesses or otherwise considering the weight of the evidence, there can be but one conclusion as to the verdict that reasonable [persons] could have reached.'" Id. (quoting Fiacco v. City of Rensselaer, 783 F.2d 319, 329 (2d Cir. 1986)).

**2. Rule 59(e) Motion to Alter or Amend Judgment**

Pursuant to Fed. R. Civ. P. 59(e) and Local Civil Rule 6.3, a party can file a "motion to alter or amend a judgment." Absent "plain error," the Court will not review issues set forth as the basis for a new trial. DeWitt v. New York State Hous. Fin. Agency, No. 97 CIV. 4651 (SAS), 1999 WL 672560, at *1 (S.D.N.Y. Aug. 26, 1999). "For purposes of evaluating a motion for a new trial, '[a]n error is plain if it results in a miscarriage of justice, or if it is an obvious instance of misapplied law.'" Id. at *1, n.3 (quoting Latsis v. Chandris, Inc., 20 F.3d 45, 49 (2d Cir. 1994)).

In particular, under either Fed. R. Civ. P. 59(e) or Local Civil Rule 6.3, a motion for reconsideration should be granted only when the defendant identifies (1) "an intervening change of controlling law," (2) "the availability of new evidence," or (3) "the need to correct a clear error or prevent manifest injustice." Kruger v. Virgin Atl. Airways, Ltd., No. 11-CV-2954 (NGG), 2013 WL 6795251, at *1 (E.D.N.Y. Dec. 23, 2013) aff'd, 578 Fed App'x 51 (2d Cir. 2014) (quoting Kolel Beth Yechiel Mechil of Tartikov, Inc. v. YLL Irrevocable Trust, 729 F.3d 99, 104 (2d Cir. 2013)).

The burden of proof is on the moving party, and the standard for granting such a motion is "strict" — "reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked — matters, in other words, that might

10

reasonably be expected to alter the conclusion reached by the court." Shrader v. CSX Transp., Inc., 70 F.3d 255, 257 (2d Cir. 1995).

**B. As to Whether the Defendant Properly Preserved His Objections to the Jury Verdict**

In his post-trial motion, the Defendant argues that the Court should set aside the jury's award of punitive and nominal damages because (1) the jury's finding that the Defendant was liable for unjust enrichment is inconsistent with its finding that the Defendant should be awarded no "monetary damages" and (2) it was clear error to permit the jury to award punitive damages based solely on the Plaintiff's claim for unjust enrichment.

Although neither party raises preservation as an issue in the present motion, the Court notes that the Defendant did not raise either of the above arguments in renewing his motion following the jury's verdict. Accordingly, the Court can only vacate the jury's verdict in order to correct a "clear error" or to prevent "manifest injustice." See AIG Global Sec. Lending Corp, 386 Fed App'x at 6 ("The forfeited issue may be reached if 'to ignore it would result in manifest injustice" or if it is a "purely legal error.'"); DeWitt v. New York State Hous. Fin. Agency, 1999 WL 672560 at *1 ("As a result of plaintiff's failure to object during the trial, a new trial can only be granted if the alleged mistakes constitute 'plain error.'")

**C. As to Whether the Jury's Verdict Was Inconsistent**

The Defendant argues that the jury's verdict is inconsistent because an award of no monetary damages suggests that the Defendant did not receive a benefit and was therefore not unjustly enriched. The Court agrees.

Under New York law, the elements of unjust enrichment are: "(1) defendant was enriched, (2) at plaintiff's expense, and (3) equity and good conscience militate against permitting defendant to retain what plaintiff is seeking to recover." Briarpatch Ltd., L.P v.

11

Phoenix Pictures, Inc., 373 F.3d 296, 306 (2d Cir. 2004). The Court's charge to the jury closely tracked these elements: "[t]he [P]laintiff must prove . . . [f]irst, that the [D]efendant . . . was enriched . . . , [s]econd, that the [D]efendant . . . was enriched at the [P]laintiff's expense[,] and [t]hird, that equity and good conscience advise against permitting the [D]efendant to retain what the [P]laintiff is seeking to recover." (Deliberations Tr. 68:14–25.)

Unjust enrichment is an equitable claim of restitution—"the law of restitution and unjust enrichment constitutes a system of benefit-based liability, in contrast to the liability for harms imposed by the law of torts." 30 Williston on Contracts § 77:121 (4th ed.). Therefore, if the Plaintiff fails to show that the Defendant received a benefit, there can be no liability for unjust enrichment. Id. ("Absent a benefit to the defendant, there can be no liability in restitution; nor can the measure of liability in restitution exceed the measure of the defendant's enrichment."); Restatement (Third) of Restitution and Unjust Enrichment § 2 (2011) ("Receipt of a benefit at the expense of another is a necessary but not a sufficient condition of liability in restitution").

In addition, the "benefit must be 'specific' and 'direct' in order to support an unjust enrichment claim." In re Bayou Hedge Funds Inv. Litig., 472 F. Supp. 2d 528, 532 (S.D.N.Y. 2007) (citing Kaye v. Grossman, 202 F.3d 611, 615 (2d Cir. 2000)). For example, in Kaye v. Grossman, 202 F.3d 611, 613 (2d Cir. 2000), a female plaintiff-attorney brought claims against the defendant, the wife of a colleague to whom she lent $50,000. The plaintiff's colleague told the plaintiff that he needed the funds for a family emergency but in fact used the funds to repay client escrow funds that he had converted. Id. at 613. The jury awarded the plaintiff $50,000 in "compensatory damages" for unjust enrichment. Id. at 614. The Second Circuit reversed the district court's denial of the defendant's motion for judgment as a matter of law and reversed the jury's verdict on the plaintiff's unjust enrichment claim. Id. at 616. The Court reasoned that the

plaintiff had failed to demonstrate that the defendant received a "direct" and "specific" benefit from the plaintiff's loan to her husband — "[the plaintiff] offered no evidence demonstrating that [the defendant] actually received any portion of the loan, nor did she show that the loan relieved [the defendant] of any financial obligations for which she otherwise would have been responsible. In these circumstances, we cannot sustain the jury's conclusion that [the defendant] herself benefitted from the loan to her husband." Id.

Similarly, In re Bayou Hedge Funds Inv. Litig., 472 F. Supp. 2d 528, 531–32 (S.D.N.Y. 2007), the court found that a plaintiff-class of investors failed to state an unjust enrichment claim against the defendant, a law firm that had provided services to a hedge fund engaged in fraud. It so ruled because there were no allegations that "[the defendant] received any money from [the hedge fund] during the class period — let alone that the money used to pay these ephemeral legal fees belonged to or came from [the] plaintiffs or other class members." Id. at 532; see also Schatzki v. Weiser Capital Mgmt., LLC, 995 F. Supp. 2d 251, 253 (S.D.N.Y. 2014) (entering judgment for the defendants with respect to the plaintiffs' unjust enrichment claim —"[g]iven that the [p]laintiffs have not established [the defendants] benefitted from the retention of the . . . client data, equity and good conscience does not necessitate the recovery of the alleged benefits."); Pure Power Boot Camp, Inc. v. Warrior Fitness Boot Camp, LLC, 813 F. Supp. 2d 489, 535 (S.D.N.Y. 2011) (entering judgment for the defendants with respect to the plaintiffs' unjust enrichment claim because the plaintiffs "failed to adequately quantify [the] [d]efendants' 'unjust gain'" from stealing certain confidential business documents).

Here, the core of the Plaintiff's unjust enrichment claim was that the Defendant received commissions as a result of the Plaintiff's investments in Agape, which he should not in equity and good conscience keep because Agape was involved in a Ponzi scheme. (Tr. 38:1–39:5,

13

42:1–4.) ("The evidence will show that [the Defendant] . . . was unjustly enriched with Sean's money in the form of commission payments.") However, there were problems with the Plaintiff's theory at the trial. In particular, there was conflicting testimony regarding whether the Defendant received specific commissions as a result of soliciting the Plaintiff's investments into the fund. (Tr. 152:5–9) (When asked by attorney Servider on cross-examination, "[d]o you have any proof that he was paid a 6 percentage of a commission," the Plaintiff responded, "[d]o I have any proof? No. Only what he told me."); see also (Tr. 170:14–171:4.) (When asked by attorney Bhukta if he made a commission on his contracts with the Plaintiff, the Defendant testified – "I make money on whatever moneys. It wasn't Sean's. If I brought in a bunch of money, I would get commission. But I was an investor. That's where I made most of my money.").

The jury's decision to award the Plaintiff "$0" in monetary damages and "1.00" in nominal damages strongly suggests that the Plaintiff failed to prove that the Defendant received any commissions from the Plaintiff's investments. Without any proof of a "direct" and "specific" benefit to the Defendant, the jury's verdict that the Defendant is liable for unjust enrichment cannot be sustained. Kaye v. Grossman, 202 F.3d 611, 616 (2d Cir. 2000) ("In these circumstances, we cannot sustain the jury's conclusion that [the Defendant] herself benefitted from the loan to her husband. We therefore reverse the verdict on [the Defendant's] unjust enrichment claim.").

Accordingly, the Court vacates the jury's finding that the Defendant is liable for unjust enrichment and enters judgment for the Defendant on that claim. As such, the jury's awards of nominal and punitive damages are also vacated.

## D. As to Whether the Court Should Grant the Defendant's Motion Pursuant to Fed. R. Civ. P. 59(e)

Even if the Court did not enter judgment in favor of the Defendant on the Plaintiff's unjust enrichment claim, the Court would strike the jury's punitive damages award because New York law does not permit an award of punitive damages based on an unjust enrichment claim.

Under New York law, to state a state a claim for punitive damages for a claim that is not itself an independent tort, such as breach of contract: "(1) defendant's conduct must be actionable as an independent tort; (2) the tortious conduct must be of the egregious nature set forth in [Walker v. Sheldon, 10 N.Y.2d 401, 179 N.E.2d 497 (1961)]; (3) the egregious conduct must be directed to [the] plaintiff; and (4) it must be part of a pattern directed at the public generally . . . ." New York Univ. v. Cont'l Ins. Co., 87 N.Y.2d 308, 316, 662 N.E.2d 763 (1995); accord TVT Records v. Island Def Jam Music Grp., 412 F.3d 82, 94 (2d Cir. 2005) ("This rule has not been changed by the Court of Appeals, and we have no reason to question its continued vitality."); Sikarevich Family L.P. v. Nationwide Mut. Ins. Co., No. 13-CV-05564 (NG), 2014 WL 3127729, at *5 (E.D.N.Y. July 3, 2014); SungChang Interfashion Co. v. Stone Mountain Accessories, Inc., No. 12 CIV. 7280 (ALC), 2013 WL 5366373, at *22 (S.D.N.Y. Sept. 25, 2013).

With respect to the first element, a "tort obligation is a duty imposed by law to avoid causing injury to others." New York Univ., 87 N.Y.2d at 310. Therefore, a Defendant may be liable in tort only "when it has breached a duty of reasonable care distinct from its contractual obligations." Id.

In the motion to dismiss context, New York courts have dismissed punitive damage claims based solely on a claim of unjust enrichment. For example, the Defendant relies on Alzheimer's Disease Res. Ctr., Inc. v. Alzheimer's Disease & Related Disorders Ass'n, Inc., 981

15

F. Supp. 2d 153, 165 (E.D.N.Y. 2013) (Spatt, J.). In that case, this Court granted a Defendant's motion to strike portions of the Plaintiff's complaint requesting punitive damages based on its unjust enrichment claim. Id.

In so holding, the Court relied on Hutton v. Klabal, 726 F. Supp. 67, 73 (S.D.N.Y. 1989). There, the court similarly dismissed the plaintiff's claim for punitive damages based on a claim of unjust enrichment. Id. at 73. The Court reasoned that "[u]njust enrichment is an equitable claim. The remedy in such an action is intended to restore to the plaintiff any benefit unjustly conferred on the defendant. This usually involves the return of money or property." Id. Therefore, the Court concluded that "[p]unitive damages are inappropriate with respect to a claim of unjust enrichment." Id.

New York courts have also struck punitive damages claims based on similar "quasi-contract" claims because those claims do not constitute "independent torts." See, e.g., New York Univ., 87 N.Y.2d at 319-20 ("[The] [p]laintiff's claim amounts to nothing more than a claim based on the alleged breach of the implied covenant of good faith and fair dealing, and the use of familiar tort language in the pleading does not change the cause of action to a tort claim in the absence of an underlying tort duty sufficient to support a claim for punitive damages."); McMorrow v. Angelopoulos, 113 A.D.3d 736, 979 N.Y.S.2d 353, 357 (2d Dep't 2014) ("Since a demand or request for punitive damages is parasitic and possesses no viability absent its attachment to a substantive cause of action such as fraud . . . , the summary dismissal of the fraud cause of action mandates the summary dismissal of the request for punitive damages that was based thereon.") (quoting Rocanova v. Equitable Life Assur. Soc. of U.S., 83 N.Y.2d 603, 634 N.E.2d 940 (1994)) (internal quotation marks omitted); Segal v. Cooper, 49 A.D.3d 467, 468, 856 N.Y.S.2d 12, 13 (1st Dep't 2008) (striking the plaintiff's demand for punitive damages

16

because the plaintiff's "primary claim is contract-based and there is no allegation that defendants' conduct was directed at the public generally"); cf. Stein v. McDowell, 74 A.D.3d 1323, 1326, 905 N.Y.S.2d 242, 245 (2nd Dep't 2010) ("However, the plaintiffs' demand for punitive damages should not be stricken, since punitive damages are recoverable for breach of fiduciary duty, where, as here, it appears that the breach may demonstrate a high degree of 'moral culpability'").

Based on the foregoing reasons, the Court finds that the punitive damages are not authorized based solely on a claim of unjust enrichment. See, e.g., Alzheimer's Disease Res. Ctr., Inc. v. Alzheimer's Disease & Related Disorders Ass'n, Inc., 981 F. Supp. 2d 153, 166 (E.D.N.Y. 2013) ("Punitive damages are inappropriate with respect to a claim of unjust enrichment.").

Therefore, even if the Court had not entered judgment in favor of the Defendant on the Plaintiff's unjust enrichment claim, the Court would have struck the jury's award of punitive damages to prevent manifest injustice and to remedy a clear error. See Kruger v. Virgin Atl. Airways, Ltd., No. 11-CV-2954 (NGG), 2013 WL 6795251, at *1 (E.D.N.Y. Dec. 23, 2013) ("A motion for reconsideration should be granted only when the defendant identifies . . . the need to correct a clear error or prevent manifest injustice.") (internal quotation marks and citations omitted).

### III. CONCLUSION

For the foregoing reasons, it is hereby:

ORDERED, that (1) the jury's finding as to unjust enrichment is vacated and judgment is entered for the Defendant on that claim and (2) the jury's nominal and punitive damages awards are vacated. Accordingly, the Clerk of the Court is directed to close the case.

17

**SO ORDERED.**
Dated: Central Islip, New York
November 25, 2014

                                                                 _/s/ Arthur D. Spatt_
                                                                    ARTHUR D. SPATT
                                                               United States District Judge